FILED
2012 Apr-20  PM 02:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| RANDALL HUFFSTUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:11-CV-3325-VEH |
| | ) | |
| GOODYEAR TIRE & RUBBER | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This action originated in the Circuit Court of Etowah County, Alabama, when Plaintiff Randall Huffstutler ("Mr. Huffstutler") filed his complaint on September 1, 2011, against Defendant Goodyear Tire & Rubber Company ("Goodyear"). (Doc. 1 ¶ 1). The lawsuit involves a claim for benefits sought by Mr. Huffstutler under "Goodyear's 1950 Pension Plan (the "Plan"), which is a defined benefit pension plan." (Doc. 11 at 5). Goodyear removed the lawsuit from state court on September 14, 2011, premising such action upon this court's federal question jurisdiction because Mr. Huffstutler's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 1 ¶ 4).

Pending before the court are Mr. Huffstutler's Motion To Determine Standard of Review (Doc. 10) ("Mr. Huffstutler's ERISA Standard Motion"), filed on January 5, 2012, Goodyear's Motion To Determine Standard of Review and Limit Scope of Review and Discovery (Doc. 11) ("Goodyear's ERISA Standard Motion"), filed on January 10, 2012, and Mr. Huffstutler's Motion To Strike Certification (Doc. 14) (the "Motion To Strike"), filed on January 24, 2012.  These motions are fully briefed and are now all under submission.  (Docs. 12, 13, 16. 17).  For the reasons explained below, Mr. Huffstutler's ERISA Standard Motion is **GRANTED**, Goodyear's ERISA Standard Motion is **DENIED**, and Mr. Huffstutler's Motion to Strike is **GRANTED**.

## II.   ERISA Standard of Review

ERISA does not contain a standard of review for actions brought under § 1132(a)(1)(B) challenging benefit eligibility determinations.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09, 109 S. Ct. 948, 953 (1989) ("Although it is a 'comprehensive and reticulated statute,' ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations.").[1]

---

[1]   ERISA provides "a panoply of remedial devices" for participants and beneficiaries of qualifying benefit plans. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).  Mr. Huffstutler asserts that he is entitled to certain pension benefits as a participant under the Plan based on § 1132(a)(1)(B).  "That provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Firestone Tire*, 489 U.S. at 108.  The

2

Moreover, the case law that has developed over time governing such standards has significantly evolved.  A history of the transformation of these principles is useful to understanding the presently applicable framework for evaluating § 1132(a)(1)(B) ERISA challenges.

In *Firestone*, the Supreme Court initially established three distinct standards for courts to employ when reviewing an ERISA plan administrator's benefits decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997) (discussing *Firestone*, 489 U.S. at 115)).  In *Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008), the Eleventh Circuit fleshed out the *Firestone* test into a six-step framework designed to guide courts in evaluating a plan administrator's benefits decision in ERISA actions.

_____

following analysis, therefore, is limited to the appropriate standard of review in § 1132(a)(1)(B) lawsuits challenging benefit denials based on plan interpretations; the court does not address the appropriate standard of review for actions arising under any other remedial provisions of ERISA.

When the Eleventh Circuit created the *Williams* test, the sixth step of the sequential framework required courts reviewing a plan administrator's decision to apply a heightened arbitrary and capricious standard if the plan administrator operated under a conflict of interest.   *See id.*   The Eleventh Circuit later modified this step in response to the Supreme Court's ruling in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 115-17 (2008), which concluded that a conflict of interest should be weighed merely as "one factor" in determining whether an administrator abused its discretion.  *See Doyle v. Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1359 (11th Cir. 2008) ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

The Eleventh Circuit's latest iteration of the *Firestone* standard-of-review framework is found in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir.), *cert. denied*, 132 S. Ct. 849 (2011):

> (1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2)   If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)   If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.[2]  All steps of the analysis are "potentially at issue" when a plan vests discretion to the plan administrator to make benefits determinations.  *See id.* at 1356 n.7.  Conversely, then, where a plan does *not* confer discretion, the court simply applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See Firestone*, 489 U.S. at 115 ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

---

[2]  "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Blankenship*, 644 F.3d at 1355 n.5.

III.    Analysis

A.      Motion to Strike

Before reaching the parties' dispute over the applicable ERISA standard of review, the court first decides the merits of Mr. Huffstutler's Motion to Strike. In his Motion to Strike, Mr. Huffstutler seeks to strike the certification (Doc. 12-1) filed by Goodyear on January 19, 2012, in support of its ERISA Standard Motion and in opposition to Mr. Huffstutler's competing motion. (Doc. 14 at 1).

The certification references three separate ERISA-related resolutions. More specifically, the certification does not attach any copies of the actual resolutions,[3] but

---

[3] Goodyear does suggest that its resolution dated April 12, 2011, is attached as Exhibit C to its memorandum in support of its ERISA Standard Motion. (Doc. 16 at 2 n.2). The court has studied Exhibit C (Doc. 11-3) and notes that it also is a certification document and not an actual resolution. This particular certification purports to summarize Goodyear's resolutions reached on April 12, 2011, and indicates that Ms. Bell signed it on January 9, 2012. Puzzlingly, while the language of the first provision included in Exhibit C mirrors that contained in the subsequent certification by Ms. Bell, (*i.e.*, identified as either Doc. 12-1 or Exhibit D), the contents of the second provision of Ms. Bell's first certification do not appear in her later one, which supposedly also covers resolutions from April 12, 2011. (*Compare* Doc. 11-3 at 1 ("FURTHER RESOLVED, that such Pension Board and ERISA Appeals Committee retain the authority and power previously granted by this Board.") *with* Doc. 12-1 at 1 (no comparable language listed in subsequent certification)). Additionally, the more lengthy second and third provisions set forth in her second certification (*i.e.*, Doc. 12-1) do not appear anywhere in Exhibit C. (*Compare* Doc. 12-1 at 1 *with* Doc. 11-3 at 1 ("FURTHER RESOLVED, that such Pension Board and ERISA Appeals Committee retain the authority and power previously granted by this Board.")). In light of such unexplained discrepancies and inconsistencies, the absence of the actual resolutions becomes even more critical to

6

instead indicates Ms. Bell's examination of Goodyear's records has "reveal[ed] . . . the following [as] . . . true and correct cop[ies] of resolutions . . . ." (Doc. 12-1 at 1).

The first section defines who are the members of Goodyear's "Pension Board and the ERISA Appeals Committee[.]" (Doc. 12-1 at 1). The second part indicates that the Pension Board and ERISA Appeals Committee are bestowed with:

> [T]he sole and absolute discretionary authority and power to interpret plan provisions, determine claims for benefits, determine eligibility and make factual determinations in order to administer and carry out the provisions of . . . the 1950 Pension Plan of The Goodyear Tire & Rubber Company . . . .

(Doc. 12-1 at 1).

The third section states:

> FURTHER RESOLVED that such Pension Board and ERISA Appeals Committee shall have the authority to establish procedures for the Plans and itself, to appoint Plan administrators of the Plans to whom they can delegate the right to hire third party administrators, trustees and other agents as needed, to hear claim appeals, including the power to appoint delegates to represent them for any claim appeals heard at a meeting in which they cannot be present, to delegate to any independent third party the right to decide the final appeal of any claim with the same authority and rights of the Pension Board and ERISA Appeals Committee or within any specified limits of their authority and rights if less than a full delegation is desired by the Pension Board and ERISA Appeals Committee.

(Doc. 12-1 at 1).

---

the court's analysis of the Motion to Strike.

The certification does not clarify when Goodyear adopted each one of these resolutions. Instead, the document only generally advises that Goodyear adopted them at a meeting "held on the 23rd day of January, 2004, as last amended on April 12, 2011." (Doc. 12-1 at 1). The certification further states that said resolutions are in full force and effect at the date hereof[.]" (*Id.*). Assistant Secretary of Goodyear, Bertram Bell ("Ms. Bell"), executed this certification on January 17, 2012. (*Id.* at 2.).

Mr. Huffstutler raises several grounds in support of his Motion to Strike, including the timing of the executed certification, which post-dates Goodyear's final consideration and denial of Mr. Huffstutler's claim on July 13, 2011, the absence of any attached resolutions, and the lack of personal knowledge asserted within the certification. (Doc. 11-2 at 1). Goodyear responds in part to some of the issues raised by Mr. Huffstutler. (*See generally* Doc. 16).

However, noticeably absent from Goodyear's opposition is any argument that counters Mr. Huffstutler's points that the certification lacks copies of the actual resolutions as well as any reference to Ms. Bell's personal knowledge of the resolutions. Additionally, the certification is not filed as a sworn to affidavit or as an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Goodyear also has not suggested that the certification, which purportedly summarizes various resolutions agreed to over a period of time by Goodyear, is admissible under

some other federal statute or rule.

As the United States District Court for the Southern District of Alabama has observed:

> "Judges are not like pigs, hunting for truffles buried in briefs." *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009). An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard. *Id.* As the Court has previously noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126, at *3 (S.D. Ala. Feb. 11, 2011).  Therefore, similar to *Amazing Grace*, because Goodyear has not "fairly presented" its opposition to Mr. Huffstutler's challenge of the admissibility of the certification, the court will not speculate as to any undeveloped avenues under which it should or could consider the evidence.

In sum, Goodyear, as the proponent of this proof, has not met its burden in supporting the court's consideration of it.  Accordingly, the Motion to Strike is **GRANTED**.

## B.    ERISA Standard of Review

In this case, the parties dispute the appropriate standard of review for the court

to apply.[4]  Mr. Huffstutler asserts that *de novo* review is called for, while Goodyear

maintains that discretionary or arbitrary and capricious review is required.[5]

　　While Mr. Huffstutler bears the burden of proving his entitlement to ERISA

benefits under Goodyear's Plan, *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038,

1040 (11th Cir. 1998), Goodyear bears the burden of proving that the arbitrary and

capricious standard of review applies. *Anderson v. Unum Life Ins. Co. of Am.*, 414

F. Supp. 2d 1079, 1095 (M.D. Ala. 2006) (citations omitted).  Based upon the terms

---

[4] The answer to which standard applies carries great significance in relation to the scope of this court's evidentiary review.  On one hand, if the *de novo* standard applies because the plan at issue does not grant the administrator or fiduciary discretionary authority, then the court is not limited in its review to simply those facts that were before the administrator at the time of the decision.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination.").  On the other hand, if the arbitrary and capricious standard applies, triggering application of the six-step analysis discussed above, then the court is limited in its review to the facts available to the administrator at the time of the determination.  *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246-47 (11th Cir. 2008) (stating, in a case where the claims administrator had discretion under the plan, that when evaluating whether the claims administrator's decision was wrong, "[w]e are limited to the record that was before [the claims administrator] when it made its decision").

[5] As a result of the Supreme Court's decision in *Glenn*, as interpreted by the Eleventh Circuit in *Doyle*, only two ERISA standards of review now exist in  the context of challenging a plan administrator's claim decision—either *de novo* or modified arbitrary and capricious.  *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

of the Plan, and the lack of affirmative substantiating proof from Goodyear as discussed more fully below, the court finds that Goodyear has failed to meet its burden of demonstrating that arbitrary and capricious review is proper.  Accordingly, the court agrees with Mr. Huffstutler that applying *de novo* review is appropriate.

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion distinction:

> The recent Supreme Court case which holds that a *de novo* standard of review is proper under some plans validates the prior law of this Circuit that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  The [C]ourt held that
>
>> a denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard <u>unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan</u>.

*Firestone*, 109 S. Ct. at 956.

<u>The plan in this case does give the administrator of the plan</u> "<u>discretionary authority</u> to determine eligibility for benefits [and] to construe the [plan's] terms." *Id.*  For example, <u>the plan states</u>,

> As a condition precedent to coverage, it is agreed that whenever <u>the Claims Administrator makes reasonable determinations in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically</u>

<u>Necessary . . .) such determinations shall be final and conclusive</u>.

*Jett*, 890 F.2d at 1138-39 (emphasis added).  Therefore, in *Jett*, the court first looked to the language of the plan in order to evaluate the standard of review issue.[6]  *Accord Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) ("Accordingly, we look to all of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness standard applicable.").

Here, Goodyear's Plan contains the following relevant language:

The <u>Pension Board</u> shall have all such power and authority as may be necessary to carry out the provisions of the Plan, <u>including discretionary power and authority to interpret and construe the Plan and to resolve any disputes arising thereunder</u> subject to the provisions of Paragraph 8 of this Article II and the power and authority expressly conferred upon it herein. The Pension Board shall have authority to grant such pensions or other benefits as are provided under the Plan and to take such further action as it shall deem advisable in the administration of the Plan in accordance with its terms.

(Doc. 10-18 at 6 ¶ 6 (emphasis added)).  Thus, the Plan bestows the Pension Board with discretionary authority <u>when a decision is made by that particular body</u>.

The Plan describes the Pension Board as follows:

The administration of the Plan shall be by a Pension Board of five officers and/or employees of the Company, at least three of whom shall

---

[6]  In *Jett*, the parties agreed that the arbitrary and capricious standard of review applied.  *Id.* at 1138 ("The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard.").

be officers.  Members of the Pension Board shall be responsible to the Board of Directors of the Company.  <u>The Pension Board shall have the authority to elects its own chairman and secretary and to appoint an administrator of the Plan to whom the powers of the Pension Board may be specifically delegated</u>.  The Pension Board may adopt by-laws and regulations for the administration of the Plan not inconsistent therewith. Any act or decision of the Pension Board shall require the concurrence of a majority of its members.

(Doc. 10-18 at 6 ¶ 5) (emphasis added).

Mr. Huffstuttler does not dispute that the Plan unambiguously vests discretion in the Pension Board to interpret its terms and make pension benefits determinations, but instead argues that *de novo* review applies for the following reasons:

The Pension Board was not the decision maker.

Discretionary authority does not apply in this situation where there is a factual dispute regarding an alleged clerical error.

Goodyear has not delegated discretionary authority to a third party. Instead, Goodyear has attempted to retain discretionary authority. The Eleventh Circuit does not allow retention of discretionary authority.

(Doc. 10 at 14).

Regarding Mr. Huffstutler's first argument, he points out that Gary Dannemiller ("Mr. Dannemiller"), not the Pension Board, denied relief on January 7, 2002, March 11, 2002, and September 16, 2002.  Mr. Huffstutler does not reference the final denial dated July 13, 2011, which was signed by a representative of Goodyear's ERISA Appeals Committee.  This correspondence also does not in any

manner suggest that the entity, bestowed with the discretionary authority <u>under the</u> <u>Plan</u>, *i.e.*, the Pension Board, was the final decision maker.  (Doc. 11-2).

The court acknowledges that Goodyear suggests in a footnote that "[t]he Pension Board is the same as the ERISA Appeals Committee (the "EAC"), the body that is referenced in the [July 13, 2011] letter setting for[th] the Decision."  (Doc. 11 at 3 n.2).  In support of this point, Goodyear indicates that it has attached "[t]he corporate resolution affirming the relationship between the two bodies–the Pension Board and the EAC . . . ."  (*Id.*).

The court has studied the referenced Exhibit C (Doc. 11-3) and finds it to be deficient in support Goodyear's standard of review position for several reasons.  One, the attached exhibit is not an actual resolution, but rather is a certification signed by Ms. Bell on January 9, 2012, which attempts to summarize the resolutions purportedly agreed to by Goodyear on April 12, 2011.[7]  Two, the certification lacks

---

[7]  The Goodyear's resolutions summarized in Exhibit C are:

    RESOLVED, that effectively immediately the Pension Board and the ERISA Appeals Committee be comprised of the General Counsel, the senior Human Resources Officer, the Controller, the head of the Company's Off-Highway Business and a Director of HR as selected by the senior Human Resources Officer; and

    FURTHER RESOLVED, that such Pension Board and ERISA Appeals Committee retain the authority and power previously granted by this Board.

any indication of personal knowledge or attestation by Ms. Bell.

Three, the court finds the summary of the resolutions by Ms. Bell for April 12, 2011, to be conflicting and unreliable as some of the resolution language contained in her January 9, 2012, certification is not included in her subsequent January 12, 2012, one (and vice versa) even though she has indicated that both documents reflect resolutions from April 12, 2011.  *See discussion supra* at 6 n.3.  In sum, the court finds the certification to suffer from the same admissibility and reliability issues as Ms. Bell's subsequent January 17, 2011, certification, which the court struck above.

Four, even if the court were to accept the January 9, 2012, certification as admissible probative evidence of a shared and/or identical relationship between the Pension Board and the ERISA Appeals Committee, the document still does not substantiate a delegation of discretionary authority by the Pension Board to the ERISA Appeals Committee.  The certification also does not indicate that Goodyear's Plan has been amended to bestow the ERISA Appeals Committee with discretionary authority. Furthermore, Goodyear does not offer any evidence that otherwise confirms that the ERISA Appeals Committee has the same discretionary power that Goodyear expressly afforded to the Pension Board under the Plan (*e.g.*, such as through

––––––––––––––––––––

(Doc. 11-3 at 1).

administrative by-laws or procedures that establish an in-house delegation of authority from the Pension Board to the ERISA Appeals Committee).

Fifth, even if the court were to accept the January 9, 2012, certification as admissible probative evidence of a shared relationship between the Pension Board and the ERISA Appeals Committee and were to assume that Goodyear had actually and validly bestowed the ERISA Appeals Committee with discretionary authority to decide disputed benefit claims, the court still would be unable to verify that the person who signed the final July 13, 2011, denial was, in fact, a duly authorized representative of the ERISA Appeals Committee, as set forth in the first summarized resolution of Exhibit C.  (Doc. 11-3 at 1).

More specifically, the court cannot tell from the denial letter or otherwise from the record if Ginnie Lowers ("Ms. Lowers"), who signed the letter as a "representative" for the ERISA Appeals Committee is Goodyear's "General Counsel, the senior Human Resources Officer, the Controller, the head of the Company's Off-Highway Business [or] a Director of HR . . . " who comprise that body.  (Doc. 11-3 at 1).  As a result, the court cannot determine if Ms. Lowers appropriately signed the denial on behalf of the ERISA Appeals Committee or even properly participated in the deliberative process as the letter seems to indicate.  (Doc. 11-2 at 2 ("The Committee requested that we follow up with Bette Pierce on several additional items

before making a final determination.") (emphasis added); *id.* at 2-3 ("<u>We</u> are required to inform you of your right to now bring an action under Section 502(a) of the Employment Retirement Income Security Act, as amended (ERISA).") (emphasis added))).

As this court has previously discussed in the comparable case of *Glover V. Amcor Pet Packaging, USA, Inc.*:

> As the Eleventh Circuit explained the fiduciary/non-fiduciary distinction with respect to determining the ERISA standard of review in *Baker*:
>
>> Appellee Grand Union argues that, "[r]egardless of whether Connecticut General may be classified as a "fiduciary" under ERISA ... there is no dispute whatsoever that Grand Union had delegated to Connecticut General the authority 'to determine eligibility for benefits.'" Appellee Grand Union would have us ignore the trust law principles upon which the *Bruch* decision is based and import greater significance to Justice O'Connor's use of the word "or" than is warranted. True, the Supreme Court held that a *de novo* standard applies unless "the benefit plan gives the administrator or fiduciary discretionary authority," *Id.* (emphasis added), <u>yet it is clear that an administrator with discretionary authority is a fiduciary</u>. *See* 489 U.S. at ----, 109 S. Ct. at 955, discussed *supra* at section I.
>>
>> <u>Conversely, one who is not a fiduciary is also not "an administrator with discretionary authority" under 29 U.S.C. § 1002(16)(A) and (21)(A). "Administrators" are distinguished from "fiduciaries" by the former's lack of discretionary authority or discretionary control"; therefore, any entity or person found not to be an ERISA "fiduciary"</u>

cannot be an "administrator with discretionary authority" subject to the arbitrary and capricious standard.

Grand Union makes essentially the same argument that was rejected by the Supreme Court in *Bruch*. In *Bruch*, Firestone "argue[d] that as a matter of trust law the interpretation of the terms of a plan is an inherently discretionary function." 489 U.S. at ----, 109 S. Ct. at 954. Similarly, Grand Union argues that since Connecticut General has the power to make initial eligibility determinations "'in accordance with the terms and conditions of the Plan,'" Connecticut General's role is "inherently discretionary."   As discussed above, Grand Union urges a far too facile reading of *Bruch* than can be sanctioned by this court.   Just as Firestone's "inherently discretionary" task of construing its benefits plan terms was insufficient to support a more deferential standard of judicial review under trust law principles, Connecticut General's "inherently discretionary" task of making initial eligibility determinations "according to the terms of the Plan" does not trigger the application of an arbitrary and capricious standard of review under *Bruch*.   *See Moon v. American Home Assur. Co.*, 888 F.2d 86 (11th Cir.1989) (rejecting a similar argument and finding that *de novo* standard of review applies). Grand Union, not Connecticut General, was given the authority to review claim denials; nor was Connecticut General given the power to formulate policy or terms of eligibility under the Plan.

*Baker*, 893 F.2d at 291-92 (emphasis added).

*Glover*, No. 4:09-CV-65-VEH (Doc. 45 at 14-16) (N.D. Ala. Feb. 4, 2010).

Similar to *Baker*,[8] in this instance, the record only shows that "[Goodyear's

---

[8] The full citation is *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288 (11th Cir. 1989).

Pension Board], and not [Mr. Dannemiller, the ERISA Appeals Committee, or Ms. Lowers], was given the [fiduciary] authority to review claim denials; nor was [Mr. Dannemiller, the ERISA Appeals Committee, or Ms. Lowers] given the [fiduciary] power to formulate policy or terms of eligibility under the Plan."  Further, no competent evidence of (i) a delegation of fiduciary authority to either   Mr. Dannemiller,  the ERISA Appeals Committee, or Ms. Lowers; (ii) an amendment of the Plan; or (iii) an adherence to administrative by-laws or procedures authorized by the Pension Board exists in the record that might otherwise support the application of the discretionary standard to this decision.

As the district court similarly explained in *Anderson*, 414 F. Supp. 2d at 1096:

> On the other hand, if an unauthorized party made the benefits determination, the denial of plan benefits is reviewed under the *de novo* standard.  *See Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993); *see also Mazzacoli v. Continental Cas. Co.*, 322 F. Supp. 2d 1376, 1381 (M.D. Fla. 2004) ("Eleventh Circuit precedent is clear that where an unauthorized party denies plan benefits, that denial is reviewed under the *de novo* standard.") (citing *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir. 1989)).

> An authorized party is one who has received a proper delegation of powers.  Pursuant to 29 U.S.C. § 1105, a plan administrator may delegate its fiduciary duties to a third party if the plan provides a clear process for such delegation.  As aptly explained by the First Circuit, 29 U.S.C. § 1105 "allows named fiduciaries to delegate responsibilities ... through express procedures provided in the plan.  To be an effective delegation of discretionary authority so that the deferential standard of review will apply, therefore, the fiduciary must properly designate a

<u>delegate for the fiduciary's discretionary authority</u>." *Rodriguez-Abreu*, 986 F.2d at 584.

*Anderson*, 414 F. Supp. 2d at 1096 (emphasis added) (footnote omitted).

Therefore, consistent with *Baker*, *Glover*, and *Anderson*, Goodyear has not met its burden of showing that an "authorized party" "with a proper delegation of powers" determined Mr. Huffstutler's benefit dispute under the Plan. Accordingly, Mr. Huffstutler is correct that a *de novo* standard of review applies to the rejection of his claim, and the court does not need to reach any of the other issues relating to the standard of review addressed by the parties. Further, consistent with this *de novo* ruling, the court will allow Mr. Huffstutler the right to conduct discovery.

## IV. Conclusion[9]

Accordingly, Mr. Huffstutler's ERISA Standard Motion is **GRANTED**, Goodyear's ERISA Standard Motion is **DENIED**, and Mr. Huffstutler's Motion to Strike is **GRANTED**.

**DONE** and **ORDERED** this the 20th day of April, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9]  The court's standard of review conclusion reached in this opinion applies through pre-summary judgment. At the dispositive motion stage, the court will entertain a request by Goodyear to reevaluate the applicable standard <u>if it adequately develops the record with acceptable evidence in this regard</u>.