FILED
2012 Sep-17  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **RANDALL HUFFSTUTLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:11-CV-3325-VEH** |
| | ) | |
| **GOODYEAR TIRE & RUBBER** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.     Introduction

This action originated in the Circuit Court of Etowah County, Alabama, when

Plaintiff Randall Huffstutler ("Mr. Huffstutler") filed his complaint on September 1,

2011, against Defendant Goodyear Tire & Rubber Company ("Goodyear"). (Doc. 1

¶ 1). The lawsuit involves a claim for benefits sought by Mr. Huffstutler under the

Goodyear Tire & Rubber Company's 1950 Pension Plan (the "Plan"). (Doc. 22-1 at

4).[1]   Goodyear removed the lawsuit from state court on September 14, 2011,

premising such action upon this court's federal question jurisdiction because Mr.

---

[1] The page references to this and other documents corresponds with the court's
CM/ECF page numbering.

Huffstutler's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 1 ¶ 4).

Pending before the court are Mr. Huffstutler's Motion for Judgment with Submissions (Doc. 21) ("Mr. Huffstutler's Motion"), filed on May 17, 2012, Goodyear's Motion for Summary Judgment and Notice of Opposition to Plaintiff's Motion for Judgment with Submissions (Doc. 22) ("Goodyear's Motion"), filed on June 7, 2012, and Mr. Huffstutler's Motion To Strike Affidavits (Doc. 25) (Mr. Huffstutler's "Motion To Strike"), filed on June 28, 2012. These motions are fully briefed and are now all under submission. (Docs. 23-24, 26-28). For the reasons explained below, Mr. Huffstutler's Motion is due to be denied, Goodyear's Motion is due to be granted, and Mr. Huffstutler's Motion To Strike is due to be denied.

## II.    Standards

### A.    Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[2]   All reasonable doubts about the facts and all justifiable inferences are

---

[2]   Although this matter is before the court on Goodyear's motion for summary judgment pursuant to Rule 56, the Eleventh Circuit recently noted that, due to the peculiar standards of review for ERISA cases, traditional Rule 56 practice may be unnecessary. *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008). Courts in this circuit have recognized that the summary judgment standard is

resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[3]   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).  Although there are cross-motions for summary judgment, each

---

not appropriate in ERISA cases where "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs. Inc.*, 133 Fed. App'x 740, 2005 WL 894840, at *7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)); *see Ruple v. Hartford Life & Accident Ins. Co.*, 340 Fed. App'x 604, 611 (11th Cir. 2009) ("[The] typical summary judgment analysis does not apply to ERISA cases."); *Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

[3] Rule 56 was amended in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955) ("Both parties filed and argued motions for summary judgment, but this does not warrant the granting of either motion if the record reflects a genuine issue of fact.").[4]  The court will consider each motion independently, and in accordance with the Rule 56 standard.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.").  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."  Wright, Miller & Kane, Fed. Practice & Proc. § 2720, at 327-28 (3d ed. 1998).

### B.    ERISA Standard of Review Generally

ERISA does not contain a standard of review for actions brought under § 1132(a)(1)(B) challenging benefit eligibility determinations.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09, 109 S. Ct. 948, 953, 103 L. Ed. 2d 80

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(1989) ("Although it is a 'comprehensive and reticulated statute,' ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations.").[5] Moreover, the case law that has developed over time governing such standards has significantly evolved.  A history of the transformation of these principles is useful to understanding the presently applicable framework for evaluating § 1132(a)(1)(B) ERISA challenges.

In *Firestone*, the Supreme Court initially established three distinct standards for courts to employ when reviewing an ERISA plan administrator's benefits decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F.3d 936, 939

---

[5]   ERISA provides "a panoply of remedial devices" for participants and beneficiaries of qualifying benefit plans. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S. Ct. 3085, 3092, 87 L. Ed. 2d 96 (1985). Mr. Huffstutler asserts that he is entitled to certain pension benefits as a participant under the Plan based on § 1132(a)(1)(B).  "That provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Firestone Tire*, 489 U.S. at 108, 109 S. Ct. at 953. The following analysis, therefore, is limited to the appropriate standard of review in § 1132(a)(1)(B) lawsuits challenging benefit denials based on plan interpretations; the court does not address the appropriate standard of review for actions arising under any other remedial provisions of ERISA.

(11th Cir. 1997) (discussing *Firestone*, 489 U.S. at 115, 109 S. Ct. at 956-57)).  In

*Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004),

*overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d

1352, the Eleventh Circuit fleshed out the *Firestone* test into a six-step framework

designed to guide courts in evaluating a plan administrator's benefits decision in

ERISA actions. When the Eleventh Circuit created the *Williams* test, the sixth step

of the sequential framework required courts reviewing a plan administrator's decision

to apply a heightened arbitrary and capricious standard if the plan administrator

operated under a conflict of interest. *Id.* at 1137.  The Eleventh Circuit later modified

this step in response to the Supreme Court's ruling in *Metropolitan Life Insurance*

*Co. v. Glenn*, 554 U.S. 105, 115-17, 128 S. Ct. 2343, 2350-51, 171 L. Ed. 2d 299

(2008), which concluded that a conflict of interest should be weighed merely as "one

factor" in determining whether an administrator abused its discretion.  *See Doyle v.*

*Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1359 (11th Cir. 2008) ("As we now

show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to

review under the heightened standard a conflicted administrator's benefits

decision.").

     The Eleventh Circuit's latest iteration of the *Firestone* standard-of-review

framework is found in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir.

2011), *cert. denied*, 132 S. Ct. 849 (2011):

> (1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2)   If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3)   If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4)   If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5)   If there is no conflict, then end the inquiry and affirm the decision.

> (6)   If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.[6]  All steps of the analysis are "potentially at issue" when a plan vests discretion to the plan administrator to make benefits determinations.  *See id.* at 1356 n.7.

Conversely, then, when a plan does *not* confer discretion, the court simply

---

[6]   "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably."  *Id.* at 1355 n.5.

applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See Firestone*, 489 U.S. at 115, 109 S. Ct. at 956-57 ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). As a result of the Supreme Court's decision in *Glenn*, as interpreted by the Eleventh Circuit in *Doyle*, only two ERISA standards of review now exist in the context of challenging a plan administrator's claim decision—either *de novo* or modified arbitrary and capricious. *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

In this case, the parties disagree over the appropriate standard of review for the court to apply when deciding Mr. Huffstutler's disputed pension benefit claim. Mr. Huffstutler asserts that *de novo* review is called for, while Goodyear maintains that discretionary or arbitrary and capricious review is required. Because Mr. Huffstutler's Motion To Strike pertains to evidence offered by Goodyear on the issue of which standard of review to apply, the court first sets out the applicable facts, then addresses the merits of the Motion To Strike, and, finally, addresses the cross-motions for judgment.

### III.   Statement of Facts[7]

#### A.   Background to Mr. Huffstutler's Pension Benefits Election

The Plan is a "pension plan" as that term is defined in ERISA. AF No. 1.[8] Mr. Huffstutler worked at Goodyear's Gadsden Plant and retired with a disability pension under the Plan effective on January 1, 1997, at the age of 49 with 27 years of continuous service. AF No. 14. At the time of his retirement, Mr. Huffstutler was married to Sheila Huffstutler ("Ms. Huffstutler"). AF No. 15.

---

[7] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following underlying facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of the relevant facts pertaining to this particular case or controversy.

[8] "AF" stands for admitted fact stands for and indicates a fact offered by Goodyear that Mr. Huffstutler has admitted in his written submissions on summary judgment or by virtue of any other evidence offered in support of his case. Whenever Mr. Huffstutler has adequately disputed a fact offered by Goodyear, the court has accepted Mr. Huffstutler's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Goodyear's statement of facts as set forth in Doc. 22-1 at 7-19 and responded to by Mr. Huffstutler in Doc. 24 at 1-3. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 19.2) would indicate the second sentence of paragraph 19 of Goodyear's statement of facts is the subject of the court's citation to the record.

Mr. Huffstutler and Ms. Huffstutler signed the "1950 Pension Plan--Notice to Pension Board[9] of Election of Optional Method of Pension Payment" (the "Election Form") on January 15, 1997.  AF No. 16.[10]  Their signatures on the Election Form were witnessed by a Goodyear representative, Betty Miller ("Ms. Miller").  AF No. 17.[11]  The Election Form allows the retiree and spouse to provide the Pension Board with a written expression of their chosen Plan benefit.  AF No. 18.

The Election Form sets out seven options (*i.e.*, Options A, B, C, D, and E, as well as Special 50% Joint and Survivor Option, and No Option) for the retiree and

---

[9]  Under the Plan, the Pension Board:

[S]hall have all such power and authority as may be necessary to carry out the provisions of the Plan, including discretionary power and authority to interpret and construe the Plan and to resolve any disputes arising thereunder subject to the provisions of Paragraph 8 of this Article II and the power and authority expressly conferred upon it herein.

(Doc. 10-18 at 6 ¶ 6).

[10]  While Mr. Huffstutler has admitted the authenticity of his signature on the Election Form for the purposes of summary judgment, he disputed its genuineness during the time period when his pension benefits claim was being reviewed administratively.

[11]  Although uncontested factually by Mr. Huffstutler, the court notes that the name of the Goodyear employee who witnessed the signatures of Mr. and Ms. Huffstutler actually appears to be Bettie Williams ("Ms. Williams").  (Doc. 23-5 at 2).

spouse to consider.  AF No. 19.1.  The chosen option is identified by checking the box that appears next to that option on the form.  AF No. 19.2.

On Mr. Huffstutler's Election Form, the box next to "Option A (100%)" was checked on the first page of the document, but Mr. Huffstulter maintains that he did not make that mark.   AF No. 20.1.  No other box was filled in on the form.  AF No. 20.2.  Option A is the 100% joint and survivor option, which provides a benefit for the retiree's surviving spouse:

> (2) After the first 60 monthly premium payments have been made, a reduced monthly pension shall be payable to me [*i.e.*, the retiree] for life. (3) After my death, (but only if my death occurs after the Option becomes effective) my spouse, as Contingent Annuitant, shall receive monthly payments in the same amount as would have been paid to me had I been then living, with such payments to continue during the lifetime of my spouse.

AF No. 21.

Effective January 1, 1997, Mr. Huffstutler began receiving monthly pension benefit payments under Option A from the Plan.  AF No. 22.  After his retirement date, Mr. Huffstutler and Ms. Huffstutler divorced.  AF No. 23.

**B.     Dispute Over Mr. Huffstutler's Pension Benefits Election**

On November 21, 2001, Mr. Huffstutler sent a letter to Gary Dannemiller ("Dannemiller"), Goodyear's Manager, Pension & Insurance Operations, claiming that "a terrible mistake was made" on the day he signed the Election Form and that

it was not his intention for Ms. Huffstutler to receive any portion of his pension benefits.  AF No. 24.1.  Ms. Huffstutler also submitted an affidavit to the same effect noting that when she and Mr. Huffstutler "left Goodyear on his retirement day [they were] under the assumption that we had chosen the retirement plan that would cease upon his death."  AF No. 24.2.

Mr. Dannemiller, in his capacity as a Plan administrator of the Pension Plan, wrote to Mr. Huffstutler by letter dated January 7, 2002, informing Mr. Huffstutler that his request to change (or correct, as worded by Mr. Huffstutler) his pension benefit option was not approved.   AF No. 25.   Mr. Dannemiller notified Mr. Huffstutler of his right to appeal this determination to the Benefits Review Committee.  AF No. 26.

Mr. Huffstutler responded by letter dated January 30, 2002, in which he wrote: "I feel this decision was totally in error in that the inappropriate box was checked and procured not by myself but by a Goodyear Employee within the benefits department. This has never been nor will it ever be the appropriate benefits option chosen by myself."  AF No. 27.  With that January 30, 2002, correspondence, Mr. Huffstutler and Ms. Huffstutler also submitted affidavits (dated January 30, 2002) stating that neither one intended to select Option A.  AF No. 28.

Goodyear's Benefits Review Committee met on March 11, 2002, to consider

Mr. Huffstutler's claim.  AF No. 29.1.  After reviewing the Plan and the submissions from Mr. Huffstutler and Ms. Huffstutler, the Benefits Review Committee denied Mr. Huffstutler's request to change (or correct) his pension option.  AF No. 29.2.  Mr. Dannemiller notified Mr. Huffstutler of the Benefits Review Committee's decision by letter dated March 19, 2002.  AF No. 30.1. In that letter, Mr. Dannemiller also notified Mr. Huffstutler of the opportunity to appeal the decision, which could be done by filing a written notice within 60 days of Mr. Huffstutler's receipt of the March 19, 2002, letter.  AF No. 30.2.

On June 13, 2002, Goodyear received a letter from Mr. Huffstutler in which he requested "that the option that I stated to the employee in the Gadsden Plan Pension Office be correctly carried out. I have submitted, previously, affidavits from myself and my ex-spouse which establishes the option which is currently being carried out was not the option that I told the employee to mark for me."  AF No. 31.  On August 5, 2002, counsel for Mr. Huffstutler (William Buttram ("Mr. Buttram")), wrote to Mr. Dannemiller because he believed Goodyear had "misinterpreted Mr. Huffstutler's requests".  AF No. 32.1.  Mr. Buttram claimed Mr. Huffstutler was requesting Goodyear "correct the mistake of a Goodyear employee who mistakenly marked the wrong option on the form."  AF No. 32.2.

By letter dated September 16, 2002, Mr. Dannemiller wrote to Mr. Buttram

13

explaining that the Benefits Review Committee did not misinterpret Mr. Huffstutler's request.  AF No. 33.1.  Mr. Dannemiller explained the committee reviewed all documents submitted by Mr. Huffstutler as well as the actual Election Form signed by Mr. Huffstutler and Ms. Huffstutler and explained the committee's analysis: "Our records show that both Randall and Sheila Huffstutler signed the Optional Method of Pension Payment form on January 15, 1997 requesting a 100% joint and survivor benefit. The option they elected explained the implication of electing this benefit.  As a result, Mr. Huffstutler [sic] request had to be denied."  AF No. 33.2.

Mr. Huffstutler did not contact Goodyear regarding the matter for over eight (8) years, at which time his new legal counsel (Myron Allenstein ("Mr. Allenstein")) submitted a letter dated January 12, 2011, to the Goodyear Department of Human Resources and Betty Williams.  AF No. 34.1.  In that correspondence, Mr. Allenstein requested that "the decision of 'no option' be implemented immediately and no more money be withheld from [Mr. Huffstutler's] retirement and he be fully repaid all money that has been withheld after 60 months with interest."  AF No. 34.2.

With that letter, Mr. Huffstutler's new counsel also submitted new affidavits from Mr. Huffstutler and Ms. Huffstutler, which they executed in January 2011.  AF No. 35.

Mr. Huffstutler stated in this affidavit:

Betty asked me what retirement plan I wanted to choose.  I was shown a number of options.  I chose the "no option" plan.  I believe I did sign a paper.  After 60 months of retirement, Goodyear began to reduce my retirement benefit as though I had signed up for Option A.  When I inquired, I received for the first time, a copy of a signed option plan.  What I was provided has a signatures [sic] at the bottom, but the signature for me is not my signature.  Sheila, my former wife, said the signature for her is not her signature.

AF No. 36.  However, Ms. Huffstutler stated, in her January 6, 2011, affidavit: "The signature on page 2 is my signature."  AF No. 37.

Mr. Dannemiller responded to Mr. Allenstein by letter dated April 21, 2011, indicating that Mr. Huffstutler's request would be heard by the Pension Board at the next meeting, tentatively scheduled for June 15, 2011.  AF No. 38.1.  Mr. Huffstutler and Mr. Allenstein were invited to attend the meeting in person or by telephone.  AF No. 38.2.

By letter dated May 13, 2011, Mr. Allenstein responded to Mr. Dannemiller again reiterating Mr. Huffstutler's contention that a Goodyear staff member had made a clerical mistake and checked the wrong box.  AF No. 39.  By letter dated May 17, 2011, Mr. Allenstein was notified that the Pension Board would meet on June 20, 2011, at 3:00 p.m. to review Mr. Huffstutler's claim.  AF No. 40.

On June 17-18, 2011, Mr. Dannemiller contacted Bettie Pierce ("Ms. Pierce") by email to discuss her standard process for assisting retirees and their spouses in

completing the Election Form.  AF No. 41.  The Pension Board met on June 20, 2011, to hear Mr. Huffstutler's appeal.  AF No. 42.1.  Mr. Allenstein, Mr. Huffstutler, and Ms. Huffstutler participated in that meeting by phone.  AF No. 42.2.

According to the July 13, 2011, letter written by Ginnie Lowers ("Ms. Lowers"), at the Pension Board's direction, the Pension Board[12] considered information from Mr. Dannemiller who described his communications with Ms. Pierce regarding the Election Form process.   (Doc. 23-22 at 1).   The letter summarized  Mr. Dannemiller's report, including how "the HR representative will check the appropriate option and populate the name of the spouse and birth date while in the presence of the applicants. The applicants are then required to sign and date page 2 of the Form."  *Id.*

According to the July 13, 2011, letter, during the June 20, 2011, meeting, Mr. Huffstutler recalled signing a paper, but claimed the signature on the bottom of the Election Form "was not his signature."  AF No. 45.1.  Ms. Huffstutler confirmed

---

[12]   Ms. Lowery actually referred to the final decision-making body as the ERISA Appeals Committee ("EAC") in her July 13, 2011 correspondence. (Doc. 23-22 at 1).  As explained *infra*, Goodyear has affirmatively shown that the EAC and the Pension Board are ERISA-review bodies for Goodyear whose names are distinctly designated under each specific plan.  Despite their difference in nomenclature, the EAC and the Pension Board consist of the same members, decide disputed ERISA claims under the applicable plan, and, substantively, constitute interchangeable entities.

during the meeting on June 20, 2011, however, that what purported to be her signature (directly below Mr. Huffstutler's signature on the Election Form) was indeed her signature.  AF No. 45.2.

According to its July 13, 2011, letter, the Pension Board further noted: "Since the pension options are actuarially equivalent, there is no financial benefit to the Plan to pay one form over the other, so there was no reason for the HR  representative to elect one option over another that would differ from the choice of the participant." AF No. 46.

After the meeting held on June 20, 2011, the Pension Board sought additional information from Ms. Pierce on the following questions, the answers to which were set forth in the Board's July 13, 2011, letter:

- Were the pension application forms signed by Huffstutler in your presence? (Answer) *Yes, the pension application forms were signed by the Huffstutlers in my presence.*

- Have you ever had a blank form signed by the applicants then later completed the option election? (Answer)  *No.*

- Are you aware of any similar situations such as the Huffstutlers? (Answer) *I have done many of these over many years and do not recollect any similar situations.*

AF No. 47.

Ultimately, the Pension Board made certain credibility and fact determinations

based on the information then available to it and included those findings in its letter:

> The Pension Board found it was more credible to believe that the normal pension application process was followed with respect to the retirement of Mr. Huffstutler.

> The Pension Board found it more credible to believe that the signature on the signature line for the employee on the second page of the Form was that of Mr. Huffstutler, which was witnessed by a HR representative and followed by the consenting signature of Ms. Huffstutler.

> The Pension Board found that Mr. Huffstutler validly elected with the signed consent of Ms. Huffstutler, his wife at the time of retirement, a pension to be paid in the form of a 100% joint and survivor annuity of Option A on the Form.

> After careful consideration and review, the Pension Board determined that the initial denial to a change in the pension option was correct and that Mr. Huffstutler's appeal is denied.

AF No. 48.

In its July 13, 2011, letter, the Pension Board informed Mr. Huffstutler that he could file suit under ERISA to seek judicial review of the final denial decision. AF No. 49. The Pension Board reviewed and approved the minutes for the June 20, 2011, Pension Board hearing which included the July 13, 2011, letter to Mr. Huffstutler's counsel, as prepared by Ms. Lowers. AF No. 50. On September 1, 2011, based on the Pension Board's final denial of Mr. Huffstutler's request to change his Plan benefit election, Mr. Huffstutler filed suit under ERISA. AF No. 51.

**IV.    Analysis**

**A.    Motion To Strike**

In his Motion To Strike, Mr. Huffstutler seeks to strike the affidavits of Bertram Bell ("Mr. Bell"), Peter Buchanan ("Mr. Buchanan"), Ms. Lowers, and Mr. Dannemiller (Doc. 25 at 1) filed by Goodyear in support of its summary judgment motion and in opposition to Mr. Huffstutler's competing motion.  Mr. Huffstuttler maintains that the court should not consider these affidavits because they are not part of the administrative record, were not disclosed in Goodyear's initial disclosures, and are irrelevant.  (*Id.* at 1).

The court rejects these challenges because, when deciding which standard of review to apply through the pre-summary judgment stage, the court expressly permitted Goodyear the opportunity to raise on summary judgment the issue of which standard of review to apply when deciding the merits of Mr. Huffstutler's disputed claim under ERISA.  (Doc. 18 at 20 n.9 ("At the dispositive motion stage, the court will entertain a request by Goodyear to reevaluate the applicable standard if it adequately develops the record with acceptable evidence in this regard.") (emphasis omitted)).   Thus, the affidavits are relevant, are appropriately filed as part of Goodyear's Motion, and are subject to the court's consideration.  Accordingly, that portion of Mr. Huffstutler's Motion To Strike is due to be denied.

Mr. Huffstutler alternatively maintains that "even if the documents establish discretionary authority to the appropriate committee, the decision maker Gary Dannemiller, had no discretionary authority." (Doc. 25 at 1). Mr. Huffstutler further states:

> On 1/7/02 Gary Dannemiller denied the relief requested.  Mr. Dannemiller denied relief again on 3/11/02 and again on 9/16/02. Gary Dannemiller has never been granted discretionary authority.  Perhaps since the Pension Board never made a decision, Goodyear allowed another review on 1/12/1[1].

(Doc. 25 at 2 (emphasis omitted) (citations omitted)).

Mr. Huffstutler's alternative objection to the affidavits does not indicate why they should be stricken.  Instead, while tacitly acknowledging that the affidavits, if considered, establish the discretionary authority of the Pension Board, Mr. Huffstutler suggests that the court should disregard the Pension Board's review on January 12, 2011 (*see* Doc. 21-13 at 1) and final denial of Mr. Huffsttutler's claim on July 13, 2011 (*see* Doc. 21-17 at 1), and treat Mr. Dannemiller's earlier decision of September 16, 2002, as the final administrative action.

Mr. Huffstuttler offers no authority for the proposition that an earlier denial of a benefits claim should take priority as the operative ERISA event over a subsequent administrative review and denial of that same claim.  Mr. Huffstutler also has not articulated how such a proposition would mean that the court should strike the

challenged proof.  This court is under no obligation to address such a perfunctory and underdeveloped position.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

As the United States District Court for the Southern District of Alabama has observed:

> "Judges are not like pigs, hunting for truffles buried in briefs."  *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009).  An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard.  *Id.*  As the Court has previously noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126, at *3 (S.D. Ala. Feb. 11, 2011).  Therefore, similar to *Amazing Grace*, because Mr. Huffstutler has not "fairly presented" this particular evidentiary challenge, the court will not speculate on ways to support such an undeveloped avenue under which it should purportedly disregard the affidavits.   Accordingly, the remaining portion of

Mr. Huffstutler's Motion To Strike is also due to be denied, and the court will consider the affidavits of Mr. Bell, Mr. Buchanan, Ms. Lowers, and Mr. Dannemiller.

**B.    ERISA Standard of Review**[13]

While Mr. Huffstutler bears the burden of proving his entitlement to ERISA benefits under Goodyear's Plan, *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998), Goodyear bears the burden of proving that the arbitrary and capricious standard of review applies.  *Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1095 (M.D. Ala. 2006) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)).  Based upon the terms of the Plan, and the additional proof from Goodyear as discussed more fully below, the court finds that Goodyear has met its burden of demonstrating that arbitrary and capricious review is proper.

---

[13] Which standard applies carries great significance in relation to the scope of this court's evidentiary review.  On the one hand, if the *de novo* standard applies because the plan at issue does not grant the administrator or fiduciary discretionary authority, then the court is not limited in its review to simply those facts that were before the administrator at the time of the decision.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination.").  On the other hand, if the arbitrary and capricious standard applies, triggering application of the six-step analysis discussed above, then the court is limited in its review to the facts available to the administrator at the time of the determination.  *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246-47 (11th Cir. 2008) (stating, in a case where the claims administrator had discretion under the plan, that when evaluating whether the claims administrator's decision was wrong, "[w]e are limited to the record that was before [the claims administrator] when it made its decision").

Accordingly, the court disagrees with Mr. Huffstutler that applying *de novo* review

is appropriate.

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Ala.,*

*Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion

distinction:

> The recent Supreme Court case which holds that a *de novo* standard of
> review is proper under some plans validates the prior law of this Circuit
> that the arbitrary and capricious standard of review is appropriate here.
> *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948,
> 103 L. Ed. 2d 80 (1989). The [C]ourt held that
>
> > a denial of benefits challenged under [29 U.S.C.A.] §
> > 1132(a)(1)(B) is to be reviewed under a *de novo* standard
> > <u>unless the benefit plan gives the administrator or fiduciary</u>
> > <u>discretionary authority to determine eligibility for benefits</u>
> > <u>or to construe the terms of the plan.</u>
>
> *Firestone*, 109 S. Ct. at 956.
>
> <u>The plan in this case does give the administrator of the plan</u>
> "<u>discretionary authority</u> to determine eligibility for benefits [and] to
> construe the [plan's] terms." *Id.* For example, <u>the plan states,</u>
>
> > As a condition precedent to coverage, it is agreed
> > that whenever <u>the Claims Administrator makes reasonable</u>
> > <u>determinations in the administration of the [plan]</u>
> > <u>(including, without limitation, determinations whether</u>
> > <u>services, care, treatment, or supplies are Medically</u>
> > <u>Necessary . . .) such determinations shall be final and</u>
> > <u>conclusive.</u>

*Jett*, 890 F.2d at 1138-39 (emphasis added). Therefore, in *Jett*, the court first looked

to the language of the plan in order to evaluate the standard of review issue.[14]  *Accord*

*Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) ("Accordingly, we look to all

of the plan documents to determine whether the plan affords the Fund enough

discretion to make the arbitrariness standard applicable.").

Here, Goodyear's Plan contains the following relevant language:

> The Pension Board shall have all such power and authority as may be necessary to carry out the provisions of the Plan, including discretionary power and authority to interpret and construe the Plan and to resolve any disputes arising thereunder subject to the provisions of Paragraph 8 of this Article II and the power and authority expressly conferred upon it herein. The Pension Board shall have authority to grant such pensions or other benefits as are provided under the Plan and to take such further action as it shall deem advisable in the administration of the Plan in accordance with its terms.

(Doc. 10-18 at 6 ¶ 6 (emphasis added)).  Thus, the Plan bestows the Pension Board

with discretionary authority when a decision is made by that particular body.

The Plan describes the Pension Board as follows:

> The administration of the Plan shall be by a Pension Board of five officers and/or employees of the Company, at least three of whom shall be officers.  Members of the Pension Board shall be responsible to the Board of Directors of the Company.  The Pension Board shall have the authority to elects its own chairman and secretary and to appoint an administrator of the Plan to whom the powers of the Pension Board may be specifically delegated.  The Pension Board may adopt by-laws and

---

[14] In *Jett*, the parties agreed that the arbitrary and capricious standard of review applied.  *Id.* at 1138 ("The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard.").

regulations for the administration of the Plan not inconsistent therewith.
Any act or decision of the Pension Board shall require the concurrence
of a majority of its members.

(Doc. 10-18 at 6 ¶ 5 (emphasis added)).

Further, unlike the pre-summary judgment record, the uncontroverted affidavits

submitted by Goodyear affirmatively establish that its proper body, *i.e.*, the Pension

Board, rendered the final benefits decision on Mr. Huffstutler's claim under the Plan,

and that the reference to the EAC within Mr. Huffstutler's final letter of denial is of

no material consequence because it and the Pension Board are interchangeable

ERISA-related entities:

> The sworn evidence submitted shows the final benefits denial decision
> was rendered by the Plan's designated fiduciary--the Pension Board.
> (Exhibit B, Buchanan Aff. at ¶19, "The Pension Board, not the EAC,
> made the final decision to deny Plaintiff Randall Huffstutler's pension
> benefit claim."; Exhibit C, Lowers Aff. at ¶11, "The Pension Board
> denied Plaintiff Randall Huffstutler's benefit claim.") Goodyear
> acknowledges that in correspondence to Huffstutler's counsel both
> Dannemiller and Lowers inadvertently referred to the Pension Board as
> the ERISA Appeals Committee. (Exhibit C, Lowers Aff. at ¶12; Exhibit
> D, Dannemiller Aff. at ¶10). However, the reason for this mixed use is
> easily explained: the Pension Board and the EAC are one and the same
> body. (Exhibit B, Buchanan Aff. at ¶15; Exhibit C, Lowers Aff. at ¶13;
> Exhibit D, Dannemiller Aff. at ¶11). . . .
>
> The Pension Board and the EAC are comprised of the same
> Goodyear representatives: Joseph B. Ruocco, Senior Vice President,
> Human Resources; David L. Bialosky, Esq., Senior Vice President,
> General Counsel & Secretary; Pierre Jambon, Vice President of the Off
> Highway Business Segment; Peter Buchanan, Director of Human

Resources Akron Operations and Rick Noechel, Vice President & Controller. (*Id.* at ¶13). Indeed, the April 12, 2011 resolution adopted by the Goodyear Board of Directors requires that the EAC and the Pension Board be comprised of the same individuals. (*See* Exhibit A, Bell Aff. at Ex. B). Accordingly, there is no functional distinction between the EAC and the Pension Board. (Exhibit B, Buchanan Aff. at ¶15). The members of the Pension Board/EAC understand that each ERISA-covered plan has given that body the fiduciary duty to decide appeals and that the members are acting as fiduciaries of the respective ERISA plan to which a given appeal relates. (*Id.* at ¶14). Because the EAC and the Pension Board are one and the same body, the Pension Board need not delegate fiduciary authority to the EAC—as doing so would be the equivalent of delegating powers to itself.

(Doc. 22-1 at 25, 26-27 (emphasis added)).

Further, Mr. Huffstutler's efforts to demonstrate that *de novo* review should apply rather than the arbitrary and capricious standard are unpersuasive. In particular and as explained above in the Motion To Strike section, Mr. Huffstutler has offered no authority for the proposition that this court should consider an earlier denial of Mr. Huffstutler's claim by Mr. Dannemiller as the operative ERISA event over a subsequent administrative review and denial of that same claim by Goodyear's Pension Board on July 13, 2011.

The court also disagrees with Mr. Huffstutler's position that the Pension Board is without discretion to decide disputed factual matters, including making credibility determinations. The Plan makes it very clear that the "[t]he Pension Board shall have all such power and authority as may be necessary to carry out the provisions of the

Plan, including the discretionary power and authority to interpret and construe the Plan and to resolve any disputes arising thereunder . . . ."  (Doc. 23-23 (emphasis added)).

> Additionally, as the Eleventh Circuit has clarified:
>
> [O]ur Court has already declined to draw a distinction between law and fact in choosing the standard of review for denial of ERISA benefits. *See e.g. Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir. 2003) (rejecting distinction between legal and factual determinations which would entitle ERISA fiduciary to deferential arbitrary and capricious standard of review even though fiduciary is under conflict of interest); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) ("[W]e consistently have upheld application of the abuse of discretion standard of review to determinations involving both plan interpretations and factual findings under ERISA.") (emphasis added). Indeed, the Fifth Circuit's holding in *Pierre*, as Connecticut General concedes, is very much the minority view, and numerous circuits have declined to adopt it.

*Shaw v. Connecticut General Life Ins. Co.*, 353 F.3d 1276, 1285 (11th Cir. 2003); *see also Buckley v. Metropolitan Life*, 115 F.3d 936, 940 (11th Cir. 1997) ("Given that the LTD Plan at issue here vests the administrator with discretion, the district court properly employed the arbitrary and capricious guidelines in judging the administrator's factual conclusions.").  Accordingly, for all these reasons, the court concludes that a review of Mr. Huffstutler's claim under the abuse of discretion standard on both interpretative and factual matters is appropriate.

### C.   Mr. Huffstutler's Pension Benefits Claim

In sum, Mr. Huffstutler's pension benefits claim is premised upon an alleged clerical mistake that was made when processing his Election Form which he and his former wife signed on January 15, 1997 (Doc. 23-5 at 2), and which became effective as of the date of his retirement from Goodyear in January 1997.  More specifically, Mr. Huffstutler contends that his Election Form improperly reflects that he chose "Option A" (Doc. 23-5 at 1) and that such form should instead indicate the "No Option" election, which he maintains was his real choice.

Under the first step of the post-*Glenn* ERISA framework for evaluating benefit claim determinations, the court must decide if Goodyear's denial of Mr. Huffstutler's claim was *de novo* wrong or *de novo* right.  Here, the court concludes that Goodyear's assessment that the benefit election identified on Mr. Huffstutler's signed Election Form "was not a product of a mistake" (Doc. 22-1 at 29) was *de novo* right.

The court bases this conclusion upon its review of the record, including the unambiguous contents of Mr. Huffstutler's filled out Election Form including an "X" by "OPTION A" with the name of Ms. Huffstutler and her date of birth listed (Doc. 23-5 at 1) as well as all the required and dated signatures that appear on the same page immediately below the unmarked "NO OPTION" alternative.  (Doc. 23-5 at 2 (emphasis added)).  Additionally, the top of the Election Form makes it clear that

obtaining Ms. Huffstutler's date of birth and recording such information on the document would have been unnecessary had Mr. Huffstutler selected the "NO OPTION" category as claimed. (*See id.* at 1 ("If Option A, B, D, E or the Special 50% Joint & Survivor Option is elected, proof of spouse's date of birth must be submitted.")).

Also factoring into the court's *de novo* assessment in favor of Goodyear is the summary of the election selection process and the answers to questions provided by Ms. Pierce that were included in the Pension Board's written denial of Mr. Huffstutler's claim on July 13, 2011 (Doc. 23-22 at 1, 2) as well as the sworn contradictions about the validity of the signatures on the Election Form, *i.e.*, at the time of the Pension Board's final decision through their affidavits, Mr. Huffstutler acknowledged that he had signed something, *see* AF No. 36 ("I believe I did sign a paper."), but disputed the authenticity of his and Ms. Huffstutler's signatures on the second page of the Election Form, *see id.* ("What I was provided has a signatures [sic] at the bottom, but the signature for me is not my signature. Sheila, my former wife, said the signature for her is not her signature."), while Ms. Huffstutler confirmed that her signature on that same page beneath his <u>was</u> genuine. *See* AF No. 37 (Ms. Huffstutler's stating under oath that "[t]he signature on page 2 is my signature")). Therefore, having determined that Goodyear was *de novo* right, the court does not

even need to proceed to the second step of the ERISA evaluative framework.

However, even assuming that Goodyear's decision was *de novo* wrong, the court finds, *a fortiori*, that the determination was reasonable and that it is due to be upheld under the applicable arbitrary and capricious standard of review. *See Jett*, 890 F.2d at 1139 ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." (citing *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 532 (7th Cir. 1986))).

In particular, the court finds that the documentary evidence contained on the Election Form strongly supports Goodyear's factual determination that Mr. Huffstutler elected Option A with Ms. Huffstutler's approval on January 15, 1997, and that no clerical mistake occurred.  The court further finds that nothing is unreasonable or improper about the Pension Board's credibility conclusions and factual findings that were reached adversely with respect to Mr. Huffstutler, Ms. Huffstutler, and the contents of their sworn affidavits.

The court also rejects, as underdeveloped and unpersuasive, Mr. Huffstutler's contention that Goodyear's claim determination is unreasonable simply because the

information obtained from Ms. Pierce about Goodyear's election selection processes was not included in a sworn statement.  (Doc. 24 at 6).  Mr. Huffstutler offers no authority for this proposition, much less any controlling cases.  Mr. Huffstutler also does not attempt to demonstrate the information's lack of reliability other than to simply state that it is hearsay.

Additionally, while it does not appear that the Eleventh Circuit has ever addressed this issue directly,[15] other circuits have made it clear that consideration of hearsay evidence in ERISA lawsuits is appropriate.  *See e.g., Pierre v. Connecticut General Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991) ("On review, however, we can require that the hearsay meet certain indicia of reliability; if it does not, the abuse of discretion standard permits the court to reject the finding."); *Pierre Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 n.3 (7th Cir. 2009) ("The Federal Rules of Evidence, however, do not apply to an ERISA administrator's benefits determination, and we review the entire administrative record, including hearsay evidence relied upon by the administrator." (citing *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 622 n.4 (7th Cir. 2008))).

Alternatively, disregarding the information supplied by Ms. Pierce on hearsay

---

[15] Neither side has cited to an on-point published Eleventh Circuit opinion, and this court's independent research efforts have not revealed one either.

grounds, the court still finds that Goodyear's determination is reasonably supported by other parts of the administrative record, including the unambiguous contents of the Election Form and the puzzling variances in the testimony from Mr. and Ms. Huffstutler about the authenticity of their signatures on the Election Form.   In particular, Mr. Huffstutler cannot prevail under the abuse of discretion standard simply because he has some competing evidence which brings into question the Pension's Board's denial of his claim.  Instead,  "[a]n administrator's determination must be upheld if it has a reasonable factual basis, <u>even if the record also contains contrary information</u>." *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) (emphasis added) (citing *Jett*, 890 F.2d at 1140).

Finally, Mr. Huffstutler has not provided any proof confirming that a conflict of interest is a relevant factor for this court to consider.  *Cf.  Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989) ("There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986))); *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) ("[A] party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set

forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514)).  Therefore, under the more deferential abuse of discretion standard, Goodyear's pension benefits determination is due to be affirmed.

## IV.    Conclusion

Accordingly, Mr. Huffstutler's Motion To Strike is due to be denied, Mr. Huffstutler's Motion is due to be denied, and Goodyear's Motion is due to be granted. The court will enter a separate order.

**DONE** and **ORDERED** this the 17th day of September, 2012.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge